## United States *v.* Ferrary et al.

1. Where, pursuant to the tenth section of the act of July 20, 1868 (15 Stat. 129), a survey of a distillery and an estimate of its producing capacity is made, and a copy thereof furnished the distiller, such survey and estimate conclusively determine the producing capacity of the distillery, fix the minimum tax due from him, and can only be abrogated by a new survey and estimate, ordered by the Commissioner of Internal Revenue, a copy of which is furnished to the distiller.
2. An abortive attempt to make a new estimate to take the place of the former cannot have the effect to annul it.

Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This is an action on a distiller's bond given to the United States under the seventh section of the act of July 20, 1868, 15 Stat. 127. The tenth section of that act is as follows:—

"Immediately after the passage of this act, every assessor shall proceed, at the expense of the United States, with the aid of some competent and skilful person, to be designated by the Commissioner of Internal Revenue, to make survey of each distillery registered, or intended to be registered, for the production of spirits in his district, to estimate and determine its true producing capacity, and in like manner shall estimate and determine the capacity of any such distillery as may hereafter be so registered in said district, a written report of which shall be made in triplicate, signed by the assessor and the person aiding in making the same, one copy of which shall be furnished to the distiller, one retained by the assessor, and the other immediately transmitted to the Commissioner of Internal Revenue. If the Commissioner of Internal Reve-

nue shall, at any time, be satisfied that such report of the capacity of a distillery is in any respect incorrect, or needs revision, he shall direct the assessor to make, in like manner, another survey of said distillery ; the report of said survey shall be executed in triplicate, and deposited as hereinbefore provided."

In the fall of 1870, Ferrary, the principal in the bond, proposed to commence distilling whiskey at Louisville, Tenn., within the second collection district of that State. Nov. 10, 1870, an assistant assessor of that district, with a person to aid him, designated by the Commissioner of Internal Revenue, made the survey agreeably to the requirements of the foregoing section, measured the tubs, and estimated the true producing capacity of the distillery. Triplicates of the report of this survey, made under the assessor's direction, were signed by him and the person aiding him ; one copy was retained by him, another sent to the Commissioner of Internal Revenue, and the third furnished to Ferrary. By this survey and report the producing capacity of the distillery was estimated upon the basis of three gallons of whiskey for each bushel of corn.

The bond now in suit was entered into Nov. 8, 1870. It is conditioned "in all respects faithfully to comply with all the provisions of law in relation to the business and duties of distillers, and pay all penalties incurred," &c., and recites Ferrary's intention to be engaged in distilling from Nov. 15. The exceptions state that he manufactured whiskey from Dec. 16, 1870 (the date of the approval of the bond), to March 10, 1871. Nov. 18, 1870, the Commissioner of Internal Revenue officially informed the assessor that the report of survey, dated Nov. 10, 1870, was "regarded as erroneous in respect to the dry inches and the yield of spirit to the bushel. According to the ruling of this office, three dry inches for rye and seven for corn are the true allowances for tubs sixty inches or under in depth ; " adding, that if the distillation was "by direct steam, the yield should be three and a half gallons to the bushel." The assessor was accordingly ordered to make another survey, as provided in sect. 10, before referred to; and the letter concluded, "as no new measurements are required," no expense was to be allowed. The second report thus demanded was made Nov. 22, 1870, with the desired amendments, fixing the producing

capacity at three and a half gallons per bushel. In making this new estimate and determination of the producing capacity, the officers did not again visit the distillery, nor make any new measurements of any part thereof, but gave all the old measurements of the former report. Triplicate copies of this last report were made; one retained by the assessor, and one sent to the commissioner. The assessor's clerk swore to having either mailed or delivered the third copy to Ferrary, and other evidence was introduced tending to show that it reached him; but he denied receiving or having any knowledge of it till about the time he closed his distillery, in March, 1871. His mail-clerk and other employés testified in a manner tending to negative its delivery at the distillery.

Assessments were made for December, 1870, January, February, and March, 1871, based upon the estimates of the second report of survey; but the evidence showed that if they had been based upon the first, there would still have been a deficiency, for which Ferrary would be liable to be assessed. After instructions not excepted to, the presiding judge told the jury that if the second report of survey was not actually made by the assessor, or assistant assessor, and his designated assistant, in like manner with the survey which was the foundation of the first report, then said second report of survey was invalid, and any assessments based thereon would also be invalid, and the plaintiff could not recover thereon in this action. The plaintiff excepted to this instruction, as well as to an instruction that "if the jury should be satisfied from the evidence that a second survey had not been made, or that a second copy of the same was not furnished Ferrary, then their verdict must be for the defendants." The plaintiff asked the judge to instruct the jury: 1st, That the first report of survey was valid and binding until the same was abrogated by authority of law; and that was only when defendant was furnished with a copy of resurvey or second survey. 2d, That, if the copy of the second survey ordered was furnished to the defendant, he would be bound by it; but if he never received it, and continued to operate his distillery under the first one, then he would be bound by the first survey, of which he admitted having received a copy. These instructions were refused, upon the ground

that no assessment was based on the first survey. An exception was taken to such refusal.

The jury found a verdict for the defendants; and, judgment having been rendered thereon, the United States sued out this writ of error.

Argued by *Mr. Assistant Attorney-General Smith* for the plaintiff in error; and by *Mr. E. C. Camp* for the defendant in error.

MR. JUSTICE STRONG delivered the opinion of the court.

The act of July 20, 1868, which imposes taxes on distilled spirits and tobacco, directs that there shall be levied and collected on all distilled spirits on which the tax then prescribed by law had not been paid a tax of fifty cents on each and every proof gallon, to be paid by the distiller, owner, or person having possession thereof, before removal from distillery warehouse. It also declares that every proprietor or possessor of a still, distillery, or distilling apparatus, shall be jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom. To determine the quantity of spirits produced, three returns in each month are required to be made to the assessor, stating the quantity and kind of materials used, and the number of wine gallons and proof gallons made and placed in warehouse. These returns it is made the duty of the assessor to examine, and he is required to make assessments for deficiencies. The twentieth section of the act also enacts that the quantity of spirits returned, together with the deficiency assessed, shall in no case be less than eighty per cent of the producing capacity of the distillery, as estimated under the former provisions of the act. Thus a liability is imposed upon the distiller of a tax of fifty cents upon eighty per cent, at least, of the producing capacity of the distillery. And such capacity is ascertained and information of it is given to the distiller before he commences his manufacture. A survey is made of his distillery, and an estimate is based on the survey of its true producing capacity, one copy of which is furnished to the Commissioner of Internal Revenue, one is retained by the assessor, and one is given to the distiller himself. These requirements of the law respecting the survey and the estimate were com-

plied with in the present case. A survey of Ferrary's distillery, together with an estimate of the producing capacity, was made on the 10th of November, 1870, and a copy of it was furnished to him. He had previously — to wit, on the eighth day of the same month — given the bond upon which this suit was brought (the other defendants being his sureties), conditioned for faithful compliance with all the provisions of law in relation to the duties and business of distillers, and on the sixteenth day of the same month he commenced distilling. So long as that survey and estimate remained unchanged, we think they conclusively determined the producing capacity of the distillery, and fixed the minimum tax due from the distiller. The bill of exceptions, however, shows that on the 18th of November the Commissioner of Internal Revenue directed the assessor to make another survey, stating in his letter that no new measurements were necessary, and, consequently, that no expense was to be allowed or incurred. The commissioner's object in giving the direction, as plainly appears from his order, was to obtain, not a new survey, but a new estimate of producing capacity, founded on the prior survey and measurements. No new survey was made under it, and no new estimate is proved to have been given to the distiller. It must, therefore, be conceded that his liability for taxes was not affected by it, and that the assessor was not authorized to make any assessment founded on any other survey or estimate than the one of Nov. 10, 1870. But what then? That survey and estimate remained in force. An abortive attempt to make a new estimate to take the place of the former cannot have the effect to annul it. If it could, the distiller would escape from any tax measured by the producing capacity of his distillery, though under the act of Congress; without an ascertainment of that, he is not at liberty to distil at all. The first survey and estimate was valid and binding, as we have said, until it was abrogated by authority of the law, and it could only be abrogated by a new survey and estimate ordered by the commissioner, a copy of which was furnished to the distiller. Thus the Circuit Court was asked to instruct the jury, and we think there was error in refusing to give the instruction asked. There was error, also, in the refusal to affirm the other proposition of the

plaintiffs, which was, "that if the copy of the second report ordered was furnished the defendant, no matter how, so he received it, he would be bound by it; but if he never received it, and continued to operate his distillery under the first one, then he would be bound by the first survey, of which he admits having received a copy." There was also error in the instructions actually given to the jury, as well as in the refusal to give that asked by the plaintiffs.

The learned judge evidently confounded the survey required by the tenth section of the act of Congress with the estimate and determination of producing capacity calculated from the survey. Hence he instructed the jury, that if the second report of survey, of which there was some evidence, was not actually made by the assessor or assistant assessor, and his designated assistant, in like manner with the survey made as the foundation of the report of survey first made, the second report was invalid, and any assessment against the distiller based thereon would be invalid, and the plaintiffs could not recover thereon in this action. To this he added, that if the jury were satisfied from the evidence that a second survey had been made, or that a copy of the same had been furnished to Ferrary, the distiller, their verdict must be in favor of the defendants. This was misleading. There was no pretence that a second survey had been made. None was contemplated by the order of the commissioner. That order expressly stated that no new measurements were required. All that was done was forming a corrected estimate, resting on the first measurements. If the corrected estimate was inoperative because of failure to furnish the distiller with a copy of it, his liability for the taxes, determined by the survey that was made, and the estimate based thereon, remained undisturbed. The suit was not founded on an inoperative assessment, as the court seems to have assumed. It was brought on the distiller's bond; and the breach averred was non-compliance with the provisions of the law in relation to the duties and business of distillers, one of which was the payment of taxes legally assessed against him. Ferrary had full information of the sums due from him. The law fixed the rate at fifty cents for each gallon of spirits produced, and the survey and estimate which was furnished him informed him

of the producing capacity of his distillery, and made it his duty to pay the tax on at least eighty per cent of that. Thus the law fixed both the rate and amount. If the assessor claimed more, without warrant, his claim did not relieve Ferrary from the duty of paying what was due, the amount prescribed by the law. So the jury should have been instructed.

*Judgment reversed, and a venire de novo awarded.*